UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMANDA SKAGGS, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>NANCY A. BERRYHILL[1], )<br>Acting Commissioner of Social Security, )<br>)<br>    Defendant. ) | Case No. 4:16-CV-228 NAB |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Amanda Skaggs' (Skaggs) application for disability insurance benefits and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 416, 423 *et seq.* Skaggs alleged disability due to traumatic brain injury. (Tr. 161.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 10.] For the reasons set forth below, the Court will reverse and remand the Commissioner's final decision.

**I. Issues for Review**

Skaggs presents two issues for review. First, she asserts that the administrative law judge's (ALJ) residual functional capacity (RFC) determination does not adequately account for her migraine headaches and fails to provide a narrative link between the medical evidence and

---
[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of Social Security. Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Nancy A. Berryhill for Carolyn W. Colvin in this matter.

the ultimate conclusion. Second, she contends that the ALJ's credibility analysis is not supported by substantial evidence. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number

of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

3

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

**III. Discussion**

    **A.    Administrative Record**

On September 28, 2005, Skaggs experienced a head injury that rendered her unconscious and required hospitalization for two days. (Tr. 236, 374.) She incurred a left knee injury in April 2006. (Tr. 376-79.) Dr. David Peeples performed an independent medical evaluation for workers' compensation purposes on January 18, 2010. (Tr. 236-39.) Dr. Peeples opined that Skaggs would need ongoing treatment with medication for her headaches. (Tr. 238.) He opined that she could work without restriction, because her headache symptoms were subjective and did not limit her occupational and personal activities. (Tr. 238-39.) He found that her neurological examination was normal. (Tr. 239.) Skaggs indicated in her disability report that she stopped working on May 25, 2009, because her employer found someone to volunteer to perform her job duties. (Tr. 161.) At her August 2014 administrative hearing, she testified that she stopped working, because the church that she worked for stopped holding meetings on the night that she prepared food for the church. (Tr. 33-34.) Her disability report indicates that her conditions became severe enough to keep her from working on January 1, 2011. (Tr. 161.)

The medical evidence in the record includes treatment from Dr. Mohammed Choudhary between 2011 and 2012 for treatment of headaches, which Skaggs alleged occurred every day. During this time, Skaggs complained of headaches, blurred vision, pressure behind her eyes,

nausea, memory loss, concentration problems, and balance problems without falling. (Tr. 264-92, 446-48, 450, 493-526.) Dr. Choudhary also performed spinal taps to relieve the headaches. (Tr. 264-69, 446-49, 493-526.) Skaggs reported relief from the headaches for a short time after the spinal taps. Dr. Salim Rahman examined Skaggs and ordered an MRI. (Tr. 270-73.) The MRI, taken on January 12, 2012, showed no acute intracranial abnormality, mild hypoplasia[2] in the left temporal lobe, and mild cerebellar tonsillar ectopia. (Tr. 274-75.) Dr. Rahman did not recommend surgical intervention, because there was no evidence of Chiari I malformation[3], nor of intracranial trauma. (Tr. 276-77.) Dr. Ifeanyi Orizu diagnosed Skaggs with myopia (near-sightedness), punctuate keratitis, and crystalline deposits in vitreous on January 25, 2012. (Tr. 368.) He did not find retinal detachment or a retinal break. (Tr. 368.)

Dr. Peeples performed a second independent medical evaluation on July 25, 2012. (Tr. 240-42.) He noted that Skaggs' post-concussive headaches continued and she had developed increased headaches, visual symptoms, and elevated CSF pressure elevations. (Tr. 242.) He opined that she may have pseudotumor cerebri[4]. (Tr. 242.)

Skaggs was admitted to the hospital from September 20, 2012 to September 24, 2012. (Tr. 456-58.) Her discharge diagnoses included left visual loss, intractable headache, and pseudotumor cerebri. (Tr. 458.) A MRI taken on September 24, 2012 showed an incidental aneurysm, but no acute findings. (Tr. 309.)

---

[2] Hypoplasia is "incomplete development or underdevelopment of an organ or tissue; it is less severe in degree than aplasia." Dorland's Illustrated Medical Dictionary 905 (37th ed. 2012).
[3] Chiari malformation is "a congenital anomaly in which the cerebellum and medulla oblongata, which is elongated and flattened, protrude into the spinal canal through the foramen magnum." Type I "involves prolapse of the cerebellar tonsils into the spinal canal without elongation of the brainstem." Dorland's Illustrated Medical Dictionary 1098 (37th ed. 2012).
[4] Pseudotumor cerebri is a "a condition of raised intracranial pressure with normal cerebrospinal fluid in the absence of an intracranial mass, hydrocephalus, or other identifiable cause." Dorland's Illustrated Medical Dictionary 1546 (37th ed. 2012). It is a "disorder commonly seen in obese young women, characterized clinically by headache, blurred vision, and visual obscurations resulting from increased intracranial hypertension." Stedmans Medical Dictionary 1593 (28th Ed. 2006).

5

On November 1, 2012, Dr. Lenworth Johnson performed an evaluation of Skaggs for a second opinion. (Tr. 335-39.) Dr. Johnson opined that Skaggs had both post-concussive headaches, as well as basilar artery migraines[5]. (Tr. 338.) On February 6, 2013, Dr. Johnson re-evaluated Skaggs. (Tr. 357-60.) He opined that Skaggs had a persistent left eye visual field defect. (Tr. 358.) On August 14, 2013, Dr. Johnson evaluated Skaggs for a third time. (Tr. 354-56.) Dr. Johnson opined that upon examination Skaggs' left eye visual field was normal. (Tr. 355.) He attributed the discrepancy in findings to a "snafu" in the visual field testing on her prior examinations. (Tr. 355.) Further testing showed normal left eye tests. (Tr. 355.) Dr. Johnson opined that Skaggs may have multiple sclerosis and recommended follow-up in six months with the Department of Ophthalmology Clinic. (Tr. 356.)

Between March 2013 and May 2014, Skaggs received treatment from Dr. Brandi French. (Tr. 341-53.) Dr. French diagnosed Skaggs with chronic daily headache, episodic migraine, complicated migraine, occasional vertigo, and head pain. (Tr. 342, 344, 346, 348, 350, 353.) In March 2013, Dr. French reviewed Skaggs' MRI and opined that it was a normal scan. (Tr. 353.) In June 2013, Skaggs' husband reported that her dizziness and speech difficulty increased when she is outside. (Tr. 347.) Skaggs reported to Dr. French in August 2013 that there were no striking improvements in her headache or migraine symptoms, but her husband reported that Skaggs' episodes of lightheadedness and confusion had definitely decreased. (Tr. 345.) Her husband reported that the lightheadedness and confusion occur when Skaggs is overheated, but otherwise are related to an aura preceding one of her severe headaches, and occur about twice a

---

[5] Basilar migraines are "a type of ophthalmic migraine whose aura fills both visual fields and which may be accompanied by dysarthria and problems of equilibrium such as vertigo and incoordination; the symptoms are in the area supplied by the basilar and posterior cerebral arteries." Dorland's Illustrated Medical Dictionary 1166 (37th ed. 2012).

6

month. (Tr. 345.) Skaggs told Dr. French that she has incapacitating migraines about twice a month, which last one day and take an additional day for full recovery. (Tr. 345.)

In December 2013, Skaggs informed Dr. French that she was pregnant and using a very limited amount of Fioricet, stopped taking Topamax, and taking Verapamil once a day. (Tr. 343.) Although Skaggs reported that she had not had a significant number of episodes of depersonalization[6]; her husband reported that she had not had any at all. (Tr. 343.) She also reported migraines about twice per month with light and sound sensitivity and her daily headaches decreased to a few per week. (Tr. 343.) At that time, she was not "medicating" those headaches. (Tr. 343.) Skaggs gave birth to a daughter on April 24, 2014. (Tr. 422-31.) Skaggs returned to Dr. French in May 2014, three weeks post-partum and reported a rebound in her migraine headaches with occurrences of 2 to 3 times per week without significant triggers. (Tr. 341.) Dr. French noted that an increase in headaches after pregnancy was not unexpected. (Tr. 342.)

On June 28, 2014, Skaggs experienced several seizures. (Tr. 395-417.) She was hospitalized for four days. (Tr. 407-408.) Her discharge diagnoses included generalized tonic-clonic seizures[7], transient encephalopathy[8], and history of head injury. (Tr. 407.) A MRI showed mild Arnold Chiari type 1 malformation, but was otherwise unremarkable. (Tr. 409.) Skaggs had a seizure during the imaging session. (Tr. 409.) A head CT scan and EEG were substantially normal. (Tr. 410-11.)

---

[6] Depersonalization is "alteration in the perception of self so that the usual sense of one's own reality is lost, manifested in a sense of unreality or self-estrangement, in changes of body image, or in feeling that one does not control one's own actions or speech." Dorland's Illustrated Medical Dictionary 491 (37th ed. 2012).
[7] Generalized tonic-clonic seizure is "the seizure of grand mal epilepsy, consisting of loss of consciousness and generalized tonic convulsions followed by clonic convulsions." Dorland's Illustrated Medical Dictionary 1688 (37th ed. 2012).
[8] Encephalopathy is "any degenerative disease of the brain." Dorland's Illustrated Medical Dictionary 614 (37th ed. 2012).

In August 2014, Skaggs testified at the administrative hearing that she experienced migraine headaches an average of twice per week and the headaches lasted all day. (Tr. 34-35.) Skaggs stated that the migraines caused light and sound sensitivity and have gotten worse over time. (Tr. 36.) She testified that she has chronic background headaches on a daily basis. (Tr. 35.) Skaggs' doctors have been unable to attribute the increase in her headaches from August 2013 to August 2014 to anything. (Tr. 42-43.) Skaggs stated that she had memory problems and trouble with focus and concentration in general. (Tr. 37-38.) She has problems remembering appointments, locations of places, and where she has placed things. (Tr. 38.) She used to drive on a daily basis until she had seizures. (Tr. 39.) Her doctors do not know the cause of the seizures and her anti-seizure medication "seems to be working." (Tr. 41.)

Skaggs stated that she, her husband, and two oldest children have chores, but since the birth of her youngest child, her oldest children have been doing more of her chores. (Tr. 41.) She noted that since leaving the hospital, she has had dizzy spells and light headedness. (Tr. 41.) On an average day, she is able to take care of the baby with help from her two older children, tidy up around the house, and prepare dinner with assistance. (Tr. 42.) She does not perform chores on the days that she has migraine headaches. (Tr. 41.)

Skaggs testified that her headache onset medication makes the headaches "slightly more bearable." (Tr. 37.) Nothing totally or completely gets rid of the headache where she "feel[s] so much better." (Tr. 37.) The medication "makes it a little easier to function." (Tr. 37.) Skaggs stated that the migraines "seem to just come on." (Tr. 37.) In addition to taking medication, Skaggs lies down in a dark room with a sleep mask and uses ice packs on the back of her neck. (Tr. 34, 37.)

The vocational expert testified that employers typically tolerate one day per absence or even less per month. (Tr. 45.)

B.  **Residual Functional Capacity Determination and Credibility**

Skaggs asserts that the ALJ did not sufficiently account for limitations caused by her migraine headaches[9] in the RFC and the credibility analysis is not supported by substantial evidence. Because the credibility determination greatly influenced the ALJ's RFC determination, the Court will address them together.

In his opinion, the ALJ found that Skaggs had the severe impairments of status post traumatic brain injury and migraine headaches. (Tr. 16.) He opined that Skaggs could perform sedentary work with the following limitations: (1) no climbing ladders, ropes, or scaffolds and (2) avoid working in temperature extremes and hazardous conditions. (Tr. 17.) Skaggs contends that these limitations do not make allowances for missed work, extra breaks, or limitations on brightness or sound as a result of her migraine headaches. Skaggs also states that the ALJ failed to make the narrative link between the medical evidence and the RFC determination.

The ALJ discounted Skaggs' credibility due to inconsistency with the objective medical evidence, a history of intermittent work before the alleged onset date, work performed by Skaggs for two years after her work-related injury, and her activities of daily living. The ALJ noted that Skaggs could independently perform personal care tasks, cook, shop, and drive (before seizure activity began). He also noted that Skaggs cared for several children including her child who was born during the relevant time period. Finally, the ALJ found that Skaggs' headaches decreased at the same time that she received less treatment for the headaches, which is inconsistent with her allegations regarding the increased intensity and activity of her headaches.

---

[9] Migraine headaches are "an often familial symptom complex of periodic attacks of vascular headache, usually temporal and unilateral in onset, commonly associated with irritability, nausea, vomiting, constipation or diarrhea, and often photophobia." Dorland's Illustrated Medical Dictionary 1166 (37th ed. 2012).

Skaggs contends that the ALJ overemphasized her improvement with medications, because she continued to have migraines despite treatment. Skaggs also states that although she had low earnings[10], she maintained jobs before and after her work injuries until her headaches worsened. Skaggs also contends that the ALJ failed to consider that she reported performing most of her daily activities with assistance or infrequently.

Therefore, the issue is whether the ALJ erred by failing to include additional limitations in the RFC determination. The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[11] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical

---

[10] Skaggs' earnings record shows no pre-onset date income in 1996, 2003, and 2004. Her average earnings in the years she worked was $3,66.41. (Tr. 144.)
[11] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). The presence of a medical disability or the requirement for treatment for a disability alone does not make a person disabled. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) ("That a claimant has medically-documented impairments does not perforce result in a finding of disability.")

In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
>
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) Any precipitating or aggravating factors;
>
> (4) The dosage, effectiveness, and side effects of any medication; and
>
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider

those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

"While the extent of daily activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015). The ALJ considered several factors in evaluating Skaggs' credibility. All of the factors evaluated by the ALJ can be considered when assessing credibility in a social security disability case. *See Teague v. Astrue,* 638 F.3d 611, 615 (8th Cir. 2011) (ALJ can consider doctors' silence on specific limitations related to migraine headaches when formulating RFC); *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ properly considered that claimant worked after injury and there was no evidence of significant deterioration in condition); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (ALJ can consider that claimant left work for reasons other than disability); *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001)(A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (ALJ could consider that claimant functioned as the primary caretaker for her home and two small children); *Walker,* 124 F.Supp.3d at 936 (the ALJ was entitled to discredit plaintiff's credibility where he had a sporadic pre-alleged onset work record reflecting low earnings and multiple years with no reported earnings).

Based on a review of the evidence in the record as a whole, however, the undersigned finds that the ALJ erred in discrediting Skaggs' credibility based on inconsistency with the medical evidence. Therefore, the credibility finding is not supported by substantial evidence. First, the ALJ opines that "objective testing has not been supportive of the claimant's claims." (Tr. 19.) The ALJ described the lack of acute findings in the CT and MRI scans and her physicians being unable to find a cause for the migraines after physical examinations. (Tr. 19.) "Because migraines constitute a subjective complaint, objective evidence conclusively showing whether a person suffers from them is impossible to find." *Carrier v. Berryhill*, CIV-1-5086-JLV, 2017 WL 885019 at *5 (D.S.D. Mar. 6, 2017) (citing *Carlson v. Astrue*, Civil NO. 09-2547, 2010 WL 5113808 at *12 (D. Minn. Nov. 8, 2010)). "Rather than using laboratory tests looking for direct medical evidence, doctors diagnose migraines through medical signs and symptoms such as nausea, vomiting, and photophobia." *Id.* An ALJ cannot "reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the [effect] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. §§ 404.1529(c), 416.[12]

"An ALJ may discount a claimant's allegations if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain." *Davidson v. Astrue*, 578 F.3d 838, 8 44 (8th Cir. 2009). There is no evidence in the record that Skaggs was accused by any provider of malingering or exaggerating her symptoms. Skaggs' symptoms are consistent with diagnoses for mild Chiari malformation or pseudotumor cerebri, as well as migraine headache. There is no dispute that she actually suffers from daily headaches and migraine headaches,

---

[12] Many Social Security regulations were amended effective March 27, 2017. Therefore, the court will use the regulations in effect at the time that this claim was filed.

because her doctors have diagnosed her with these conditions and continue to prescribe medication for treatment. Therefore, the ALJ's contention that objective testing was not supportive of her claims is not completely accurate.

Next, the ALJ discredited Skaggs credibility because during her pregnancy she significantly decreased her migraine medication and experienced less migraine headaches. The ALJ wrote:

> Most interestingly, when the claimant was pregnant in late 2013, she alleged having only two headaches per month and was taking less medicine to treat headaches at that time (Exhibit 5F/4) She also denied ongoing dizziness and blurred vision with headaches. She later reported an increase in headaches, yet the fact she was having fewer occurrences while receiving less treatment is inconsistent with the intensity of symptoms alleged in connection with her disability application (Exhibit 5F/2). This has a negative impact on her credibility.

(Tr. 19.)

The ALJ's summary contradicts Skaggs' treating physician's treatment notes and is an unreasonable inference regarding migraine headaches during pregnancy that is not supported by the medical record. The ALJ improperly relied on his own inferences about the effect a pregnancy can have on an individual's chronic migraine headaches. *See Combs v. Berryhill*, 868 F.3d 704, 709 (8th Cir. 2017) (ALJ erred in relying on his own inferences about what claimant's medical providers' notes meant). There is absolutely no support in the record for his contention that a decrease in headaches for sufferers of migraine headaches during pregnancy is abnormal. None of Skaggs' providers provided any indication that a decrease in headaches during pregnancy was unusual. During Skaggs' only visit with Dr. French during her pregnancy, Dr. French noted that Skaggs was doing quite well on the lower dose and she did not think she would need an increase "later in pregnancy unless the pain starts to increase." (Tr. 344.) A few weeks

after Skaggs delivered her child, her migraine headaches increased. (Tr. 342.) Dr. French wrote in the medical record that "it is not unexpected for migraines to increase after pregnancy." (Tr. 342.) Dr. French adjusted Skaggs' medication regimen to account for her post-pregnancy status, including breast feeding. (Tr. 342.) Dr. French noted that she warned Skaggs to be cautious with butalbital due to breastfeeding. (Tr. 342.).

Because the ALJ relied greatly upon these credibility findings in formulating the RFC, the Court cannot determine whether the ALJ's decision would have been the same if he had not erroneously interpreted Skaggs' medical records. The Court is not stating that the ALJ cannot consider objective medical evidence or any of the other factors that the ALJ considered. The Court is stating that it is unable determine if the ALJ would have made the same decision without reliance on the improper inferences of the findings in the administrative record. The ALJ is in the best position to address this issue.

## IV.  Conclusion

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court has the power to "enter, upon the pleadings and transcript of the record, a judgment, affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. 405(g). When a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000).

"Where the total record convincingly establishes disability and further hearing would delay the receipt of benefits, this court has ordered the immediate award of benefits without

15

further delay." *Blakeman v. Astrue*, 509 F.3d 878, 890 (8th Cir. 2007). That standard has not been met here. Therefore, the Court will reverse and remand the Commissioner's decision and order the Commissioner to make a new credibility finding and RFC determination as outlined in this memorandum and order.

The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner*, 213 F.3d at 1011 (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination). Because Skaggs first applied for benefits in 2012 and it is now 2017, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Skaggs seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 15, 21.]

**IT IS FURTHER ORDERED** that the ALJ's decision of August 25, 2014 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Nancy A. Berryhill for Carolyn W. Colvin in the court record of this case.

Dated this 21st day of November, 2017.

                                                      /s/ Nannette A. Baker
                                              NANNETTE A. BAKER
                                              UNITED STATES MAGISTRATE JUDGE